In re KAUFMAN.

In re SUISMAN.

(Circuit Court of Appeals, Second Circuit. January 8, 1917.)

No. 77.

1. BANKRUPTCY ☞404(1)—DISCHARGE—NATURE OF RIGHT.
    Under the present Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544), a discharge is a legal right, unless some objection is filed and affirmatively sustained for reasons specifically enumerated in section 14 (Comp. St. 1913, § 9598) of the act.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 679, 681–691; Dec. Dig. ☞404(1).]

2. BANKRUPTCY ☞408(4)—DISCHARGE—OBJECTIONS—CONCEALING ASSETS—OWNERSHIP OF PROPERTY.
    A voluntary bankrupt, to whom his brothers-in-law had conveyed a store under a recorded conditional sale contract, and who had permitted

it to be taken back by them under that contract more than two years before his bankruptcy, after which the bankrupt was employed in the store as manager for his brothers-in-law, and later for his brother, to whom the store had been conveyed by another recorded conditional sale contract, is not the owner of the store, so that his failure to list it among his assets is not a concealment of property, which prevents his discharge in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞408(4).]

Appeal from the District Court of the United States for the District of Connecticut.

In the matter of Jacob S. Kaufman, voluntary bankrupt. From an order of the District Court, granting discharge to the bankrupt, Max Suisman appeals. Affirmed.

In 1906 two brothers named Cantarow owned a drug store in the city of Hartford. Their sister, a licensed pharmacist, was engaged to be married to the bankrupt, Kaufman. By way of giving her a dowry, the drug store was (in 1906) conveyed to the bankrupt and Miss Cantarow, who shortly became Mrs. Kaufman. Such transfer was by a bill of conditional sale duly recorded, the amount recited as due to the Cantarows being $2,000—a sum apparently somewhat less than the store, good will, etc., were worth; the overplus was dowry. The bankrupt and his wife conducted the store (Kaufman being also a licensed pharmacist) in their own name until April 22, 1912. Shortly before that date a small judgment was obtained against the bankrupt, and at various times, prior thereto some $600 had been repaid the Cantarows by either Mr. or Mrs. Kaufman.

For the purpose of protecting themselves, as well as preventing collection of the judgment against Kaufman, the Cantarows, on said April 22d, took possession under their conditional sale bill; the Kaufmans not objecting. Subsequently one of the brothers Cantarow conveyed his share of the business (thus revested in them) to another sister, one Sophie. On January 20, 1914, this brother and sister conveyed the property to one Isaac L. Kaufman (a brother of the bankrupt), conditioned upon the ultimate payment to the grantors of $5,000.

All the aforesaid conveyances and bills of sale were duly recorded in compliance with the laws of Connecticut. The bankrupt's brother was not a licensed pharmacist, and the bankrupt took out such licenses as were necessary for the conduct of the drug store in his own name as an employé. There is nothing to controvert the testimony that, from the time of the surrender of the property to the Cantarows in 1912, he was but an employé of his brothers-in-law, or his brother, as the case might be. He managed the business from the time it was conveyed to him and his prospective wife (who died, apparently before bankruptcy).

On March 27, 1914, Jacob S. Kaufman filed a voluntary petition in bankruptcy, was duly adjudicated, and applied for discharge within the statutory period. This appeal was taken from the order overruling objections and granting discharge.

Jacob Schwolsky, of Hartford, Conn., for appellant.
Albert C. Bill, of Hartford, Conn., for appellee.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] If discharges in bankruptcy depended (as they once did) upon a vote of creditors, doubtless the method of conducting business hereinabove displayed would not induce most men to grant the privilege prayed for. But a discharge under the present act is a legal right, unless some ob-

jection be filed and affirmatively sustained, for reasons specifically enumerated in section 14 of the statute, and not otherwise.

[2] The objections herein, though put in several ways, amount to this, viz.: That the drug store really belonged to Jacob S. Kaufman, and, not having been included in his schedules, he is guilty of concealing assets and making a false oath, and therefore should not be discharged. There is a portion of one objection, which apparently seeks to assert that discharge should be refused because the surrender or transfer of the drug store from the Kaufmans to the Cantarows on April 22, 1912, was in fraud of creditors. This may be quite true, but the only conveyance of that kind which by section 14 of the act is made ground for refusing discharge is a transfer within four months of petition filed, and this transfer was nearly two years old when the petition herein was presented.

The sole question raised by this appeal is whether, within the statutory period, Kaufman owned the drug store or conveyed the same. It is apparently true that the Cantarows, who undoubtedly owned it in 1906, thereafter so arranged matters as to afford out of the business a livelihood to their sister and brother-in-law, giving them an opportunity to become owners upon payment of sums of money, too moderate to be explained otherwise than by family affection. There was no secrecy about this; all creditors could discover the actual status of affairs by investigating the public record office. One may suspect that the bankrupt's brother is really a servant, but there is no proof. Yet he took title from the Cantarows, who, if they wished to benefit the bankrupt without giving him property subject to payment of his debts, had the right of so doing, if the forms of law were observed. Legal formalities were observed, and we conclude with the District Judge that as matter of fact Kaufman did not own the drug store in question, nor any share thereof, for nearly two years prior to bankruptcy.

The order appealed from is affirmed, with costs.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes